We'll hear argument first this morning in Case 15-6418, Welch v. United States. Mr. Ali. Mr. Chief Justice, and may it please the Court. Johnson is retroactive because it is a rule of substantive criminal law, not a procedural rule that regulates only the manner of determining a defendant's culpability or sentence. This Court applies a straightforward test for distinguishing between those rules that are procedural and those that are substantive. Assuming perfect trial or sentencing procedures, does the new rule change the authorized outcomes of the criminal process? If no, meaning that a court could have reached the same outcome had it applied perfect procedures, then we're dealing with a procedural rule. If the Court is retroactive, does it change the authorized outcomes of the criminal    If no, meaning that a court could have reached the same outcome had it applied Those are procedural concerns. Your Honor, we think under this Court's decision in Bousley, it's clear that you don't look to the source of the rule and that that's not governing. And what's relevant here, as it wasn't relevant in Bousley, is that there was no valid act of Congress which authorized the punishment for a class of persons. Here the class of persons who, absent the residual clause, would have had two or fewer qualifying crimes under ACCA. In Bousley, the class of persons were those who merely possessed firearms. But to answer your question more directly, Justice Ginsburg, as we explain on page 1617 of a reply brief, we think it's far from clear, even if that were the test, that vagueness sounds only in procedural due process. In fact, it's qualitatively different, we think, from procedural due process in the way that we don't think of when it comes to procedural due process. So Johnson didn't say government, if you provide notice to people or greater notice, you can still come after them under the residual clause. What Johnson said was the residual clause is facially unconstitutional. No person may be sentenced to 15 to life under the residual clause. So what we know now is that people like Petitioner are spending somewhere between an additional 5 years to the rest of their life in prison based on where there was no valid act of Congress which authorized that punishment, and that, we believe, is very clearly a substantive rule under Bousley. Alitoso, before you get too deeply into the substance of your argument, could I just ask a possibly irritating question about the facts of this particular case? The first question that you raise in the cert petition is whether the district court was in error when it denied relief on Petitioner's 2255 motion. And I want to – if you look at page 96A of the Joint Appendix, the first sentence of – I'm sorry, the paragraph 8 on that page, can you tell me if you were a district court judge, would you have seen in that argument the argument that the residual clause of the Armed Career Criminal Act is unconstitutionally vague? Your Honor, we believe that with liberal pro se pleading standards, that what's said on 96 and what's said on page 83 where Petitioner invokes his Fifth Amendment right to due process, combining that with the language here that he does not meet armed career criminal requirements because it's, quote, ambiguous, vague, and without any violence, we think that would satisfy it. But more importantly, we think that that's not true. Alitoso, I mean, that wasn't exactly the question I asked. Particularly when I was on the court of appeals and we reversed the district court judge, they would always complain that, you know, you're asking us to – you don't understand our situation. My question is, if you were a district judge, would you have seen in this sentence Petitioner's robbery under Florida State Statute section 812, et cetera, is ambiguous, vague, and was without any violence and or physical force? If you read that as a district court judge, would you have seen in that the argument that the Court adopted in Johnson? You're right. I think the answer is yes, again, when you read it with the sentence before. And – but more fundamentally, I think the answer is that it doesn't matter because there's no question that Petitioner is entitled to the benefit of Johnson in this case. So the question is, how can it not matter? You're arguing that the district judge made a mistake. So your answer is you would have seen it there, and you would be a very prescient district judge. I think that's the answer. Well, Your Honor, my more complete answer is that the questions presented that were drafted in this case and granted by the Court were drafted by a pro se litigant. And I think that taking the two questions together, what those questions ask are, did the Court of Appeals err in reversing or in denying a certificate of appealability? So the first question is referring to, did it err on the basis of the elements clause question. And that raises merely the question of whether reasonable jurists could disagree as to whether Petitioner's conviction qualified under the elements clause. And the second prong goes to Johnson's retroactivity, which, again, raises the question of whether reasonable jurists could disagree as to whether Johnson is retroactive. So it may be the case that the first question presented as drafted by the pro se litigant when it was and granted by this Court suggests to you that the question is that whether the district court erred. But I think the better reading of the question is whether the district court – sorry – whether the Court of Appeals was erroneous in reversing or in denying the certificate of appealability. You mentioned the elements clause. That wasn't – that wasn't passed on below, was it? The – I think the Court of Appeals said it wasn't deciding that. Your Honor, with respect to the elements clause, on direct appeal, the Petitioner challenged whether he qualified under either of the two clauses, the residual clause or the elements clause. And the Eleventh Circuit on direct appeal said it's arguable that the elements clause would not have applied. It's not – But it didn't make that a holding. It did not make that a holding. That's correct, Your Honor. Instead, what it did was fall back on the residual clause, as many courts at this time did, because the residual clause, as this Court, I think, acknowledged in Johnson, provided a relatively easy, standardless analysis that would allow – that many people could be subsumed within. And that's really the problem here, is we're dealing with an instance in which there was no act of Congress which authorized this under Johnson. And what we had was essentially courts deciding whether people did or did not fall under this clause that this Court has described as nearly impossible to apply as a judicial morath in a black hole, which frustrated any attempt to apply. And we think it follows from that that this is clearly a substantive rule getting back into the merits of retroactivity. And if you will, Your Honors, I'd like to just talk briefly about how illogical it would be to deny retroactivity in this case. So consider a decision of this Court, like Skilling, where the Court narrowly  Now, that case under Bowsley would be retroactive, because it is an interpretation and everybody who falls out of that core scope would get the benefit of Skilling retroactively, and that's what the courts of appeals have concluded. Now, if the Court denies retroactivity here, what it would be saying is, if the three justices in Skilling had their way and instead the Court had concluded that there is no possible interpretation of this statute, it's incapable of interpretation, all of those same people, if the Court went the further step, all of those same people would be denied relief. And we think that's entirely arbitrary. And it shows in the context of ACCA itself. So this Court in Begay said that DUI does not clearly fall within ACCA's residual clause. And then in Chambers, the Court said that failure to report to a penal institution does not clearly fall within ACCA's residual clause. And as the Court made those decisions, those are retroactively applicable, and the Court's amicus agrees that those should be retroactively applicable. And what the Court would be saying if it denied retroactivity here is that if the Court goes the further step and says, in fact, we have no idea what Congress did or did not want to follow, so nothing clearly falls, or almost nothing clearly falls within this clause, that retroactivity, nobody would get the benefit of retroactivity. And we think that's an untenable result. So, Your Honor, if I — if there are no further questions, I think I'll reserve the remaining time I have for rebuttal. Roberts Thank you, counsel. Mr. Dreeben. Dreeben, thank you, Mr. Chief Justice, and may it please the Court. The United States agrees that Johnson constitutes a substantive decision that's retroactively applicable on collateral review. The effect of Johnson is the controlling inquiry here. What Johnson did was eliminate a substantive basis for imposing an enhanced sentence under the ACCA, and the effect of that is to create a class of people that the law cannot punish under ACCA. This is the Court's language in Shiro v. Summerlin on the definition of a substantive rule. The reason you're troubled by the use of the word class of people, and Mikai is right, that that's almost a circular argument. You're a class of people because I say you can't be covered by this. It doesn't make much sense in terms, can't be covered by this law. What's — isn't there a simpler way of arguing this, which is that if your co-counsel is, Petitioner's counsel is suggesting it, if you can be retried under the existing law with a corrective process, that's procedural. If you can't be retried and sentenced that way, that's substance, substantive. Dreeben, I think that's a fine way, Justice Sotomayor, to solve. Sotomayor, it's a pretty simple rule. What's wrong with it? Dreeben, the only caveat that I have about it at all is, as this Court knows from my experience, is that a law that invalidates a mandatory minimum punishment within an existing range is a substantive rule because it expands the range of outcomes. It may not eliminate the outcome that the defendant actually received, but it does require an expanded range of outcomes, and we regard that as a substantive holding. But with that caveat, I entirely agree that the basic distinction between substance and procedure is the substantive holding changes the question that the court or the sentencer is answering. It changes it from, in this case, did the defendant have a conviction that qualified under the residual clause, to does he have a conviction that qualifies under the elements clause or the enumerated offense clause only. It strikes from the statute a basis, a discreet basis for finding ACCA applicable, and that is, I think, as you correctly point out, Justice Sotomayor, very different from a procedural rule that would say you have to give the defendant 20 days' notice before the defendant litigates this, or the defendant has to be able to introduce certain kinds of evidence in support of the defendant's claim, but the court is still looking at felony under a preexisting definition unaltered by the court's new ruling. And once the court divides the world between procedural consequences and substantive changes in the law that alter the question, the very question that the court is answering, I think that resolves the substance versus procedure inquiry. Kennedy. Kennedy, what happens in a State court, a State criminal system, if the statute says a judge may take into account whether or not past acts, past crimes were crimes of violence, and a judge makes that finding, it's almost in the same terms as the statute that was struck down in Johnson. What result there? Justice Kennedy, I think the result would be the same if it were actually an analogous State law provision that was worded the same and that was invalidated on vagueness grounds. And that's even assuming that the sentence the judge gave after making that finding was within the maximum permitted by the statute. Yes. If the substantive basis for imposing that sentence is altered so that the judge could no longer rely on the fact that he did rely on to impose that sentence, then it alters substantive law. And there may be defendants, and in fact Petitioner may be one, for whom ACCA is still applicable because there's an alternative way of imposing the same sentence. Ginsburg, can you explain how this elements clause might work? You say on the residual clause it's substantive, but you say the elements, it might be, it still might fall under the elements clause. Can you spell that out? Well, Justice Ginsburg, the time of the conviction, he was convicted of strong-arm robbery, and there was an argument that he raises and continues to raise that strong-arm robbery doesn't require, as interpreted by Florida law at the time of his conviction, violent force. This is what the Court held is required to satisfy the elements clause in ACCA in the other Johnson case, the Curtis Johnson case. So he argues that violent force wasn't required. The Eleventh Circuit looked at some State law precedents and said, we're just not going to decide this issue. It's easier to resolve under the residual clause. So it remained an open issue under Eleventh Circuit law, and the courts below just haven't decided it. I think there is a very substantial argument that a proper reading of Florida State law would lead to the conclusion that you do need to use enough force to take property from another person to be convicted of Florida strong-arm robbery, and that would satisfy the Curtis Johnson standard, in which case his conviction would count but on an alternative basis. But he has arguments to the contrary. They have never been reviewed by the courts below, and that is why the government's view is that this Court should resolve the retroactivity of Johnson in this case. If it concludes that Johnson is retroactive, rather than being a court of first view on the elements clause, the Court should let the Eleventh Circuit sort that out. Ginsburg. The Eleventh Circuit, as counsel said, decided the case on the basis of the residual clause. But there's one other part of this that's a little foggy to me, and it doesn't arise in Welch's case because this is his is the first 2255 motion, is that? That is correct. And there's something about successive, second or successive motions, does that work a little differently, or is it the same? It works very differently, Justice Ginsburg. To get certified for filing of a second or successive 2255 motion, a defendant has to go to the court of appeals and request authorization and receive it under 2255H, and 2255H2 permits certification when a new rule of constitutional law has been made retroactive to cases on collateral review by this Court. So it requires a ruling from this Court that the ruling that's relied upon is retroactive. And the courts of appeals have split methodologically and substantively on whether this Court has made Johnson retroactive. To be very brief about it, the government's position is that this Court has done so through a combination of holdings. It's a syllogism. All substantive rules are retroactive. Johnson is a substantive rule. Therefore, this Court's jurisprudence makes Johnson retroactive. But that has occasioned substantial disagreement in the courts of appeals. Unfortunately, Congress precluded certiorari review in the AEDPA, so this Court cannot directly review that conflict. If the Court in this case were to hold that Johnson is retroactive, it would make Johnson retroactive and thereby entitle the second or successive filers to come in, and the government believes that that would be appropriate, because if, in fact, they are serving an ACCA sentence based on a residual clause conviction, they're in jail for a minimum of 5 years longer than Congress ever validly authorized. And in the government's view, that's the kind of substantive holding that Justice Harlan had in mind in the Mackey case, which was the progenitor of the Teague opinion. It means that the criminal process has come to rest at a point where it never should have come to rest. The residual clause was not found to be unconstitutional until Johnson, but once the Court has concluded, contrary to the government's argument, to be sure, but that it is facially void, it means that Congress never supplied a valid basis for those sentences. And we think that it is consistent with the doctrinal framework that the Court has announced for habeas cases and for the substantive versus procedural inquiry to hold it retroactive. Now, the amicus in support of the judgment has offered an alternative way of analyzing retroactivity. Its method, its approach is to look at the source of the underlying right rather than the effect that it has in the criminal proceeding. That approach is in some ways reminiscent of the first step in retroactivity analysis under Linkletter v. Walker, the very approach that the Court overthrew in Teague. That inquiry said what was the purpose of the new rule being designed. The amicus's argument would send the courts back to look at that as opposed to looking at the effect of the rule. And Justice Harlan himself, I think, offered us a very clear indication that he understood that it was the effect of the rule rather than the source of the rule. He examined two cases in combination in the Mackey decision in the United States of Coin and Currency that involved a Fifth Amendment violation, punishing somebody for compelling, you know, compelling self-incrimination. And that is a procedural rule, but when it is the very basis for criminal liability, in other words, punishing somebody for failing to incriminate themself, Justice Harlan said that's a substantive effect and it's entitled to retroactivity. When, on the other hand, it simply gives rise to evidence that should not have been admitted in an otherwise valid proceeding, it produces a procedural rule that Justice Harlan believed was not entitled to retroactivity. Same right, two different outcomes depending on the effect in the particular case. And we think that that effects-based approach is what the Court adopted in Shuro v. Summerlin and in Teague and has applied in numerous other cases. And it's also the basis for the government's view that while Johnson does apply to the sentencing guidelines, in the sentencing guidelines context, it does not create a substantive rule. It creates a procedural rule. The sentencing guidelines serve as information that the judge must legally consider in imposing the sentence, but it does not alter the statutory maximum or require a statutory minimum. So a mistake in applying the guidelines functions as a piece of misinformation. It's analogous to wrongly weighed facts or legal considerations within a preexisting range. And in our view, that is under the definition that Justice Sotomayor articulated and other definitions, a procedural rule. It influences the way a guideline sentence influences what the judge does, but the judge's charge remains the same, to impose a sentence that is sufficient but not greater than necessary to achieve the purposes of punishment within a preexisting statutory minimum and maximum. Kennedy, in the Guidelines case, because you are guilty of a crime of violence, I find you within that class of persons to whom I will give an enhanced sentence.  Dreeben. I think it is still procedural within the meaning of the Teague line of jurisprudence, because errors that result in a judge giving too much weight to a particular factor in making a discretionary decision fall into the procedural basket. This Court has a number of death penalty cases in which either the jury was deprived of considering certain information or it improperly gave weight to certain factors. It received instructions that may have relieved itself of a sense of responsibility or ignored mitigating factors. And the Court has said those are procedural. They don't change the ultimate outcomes that the Court has before it. They only influence the way in which the party gets to the outcome. And they may be — there may be error there, quite serious error. But the question for retroactivity is not whether there is error. It's whether it's procedural error or a substantive error that actually alters the range of conduct that's being punished. Here, we believe it's the latter. Alito, do you have any view about what we should say about whether the vagueness issue was properly raised? I believe that the appropriate thing to do, Justice Alito, would be to leave that issue open for the Eleventh Circuit to evaluate in the first instance. It has not been passed on by any lower court. I do quite agree with your reading of the district court complaint. I do not believe that a vagueness issue was properly raised in the district court. It was called to the Court's attention in the application for the certificate of appealability and in a request to hold that application for Johnson. At the time that the Eleventh Circuit denied those things, it committed no error either, because Johnson had not been decided. And that makes this case, as I think we said in our brief, a somewhat unusual procedural vehicle for clarifying the law as to Johnson. The United States filed a brief at the petition stage saying, just vacate this case and remand it so that the Eleventh Circuit can apply Johnson, and, of course, it would be free to apply other procedural rules. And we still think that's the right result. Alito, can we do that? Can we just decide an abstract legal question without deciding whether the issue is before us? Yes. I think that the Court has jurisdiction to resolve a pure question of law and to make clear that other procedural impediments which have not been ruled on below remain open for the lower court. I don't see any jurisdictional obstacle to this Court doing it. And the Court has in some other context resolved legal issues. I'm sorry, may I complete the answer? And remanded to a lower court with leave for that court to apply a procedural bar if, in fact, that was the appropriate thing to do. But the government didn't raise a procedural bar. We are most certainly, Justice Ginsburg, not raising procedural default in this case. I was meaning to refer generically to the category of procedural issues along the lines that Justice Alito mentioned that should remain open for consideration below. But the United States has waived procedural default in this case. Thank you, counsel. Ms. Walker. Mr. Chief Justice, and may it please the Court. In the 25 years since Teague was decided, this Court has never held that a new rule based on the central procedural guarantees of the Due Process Clause in either the Fifth Amendment or the Fourteenth Amendment nonetheless constituted a substantive rule that could apply to overturn final criminal judgments. You should not do so for the first time here. How can it not be substantive when under one rule the sentence range goes minimum of 15 years up to life, and on the other reading it's zero to 10 years? I can't imagine anything more substantive than five extra — a minimum of five extra years in prison. Because the government's articulation of the test, which is an effects-based test that they draw from a statutory construction case, Boosley, is not the proper inquiry for asking whether a new constitutional rule is substantive or procedural. Since Penry, which, after all, was the case that first extended Teague's first exception into the sentencing context in the first place, there the Court looked for the existence of a, quote, substantive, categorical, constitutional guarantee. And ever since, that's what this Court has looked for. The foundation stone, as you said, just two months in Montgomery, is the existence of a, quote, substantive constitutional guarantee. That must be the lodestar for whether a new constitutional rule is procedural or substantive. Ginsburg. And what is the substantive constitutional guarantees? Much of the Sixth Amendment is all procedure, right? That's true, and that was Summerlin, Justice Scalia, and that actually proves my point about the proper analysis. In Summerlin, Justice Scalia looked to the Sixth Amendment right to jury trial,  and he said, well, it can't be substantive because the Sixth Amendment jury trial right has nothing to do with the scope of conduct that Congress can either punish or prohibit. And so, too, here, I don't think there's really any question, I don't think my friends on the other side have seriously contested this, but Johnson is a case that is founded on the procedural due process right not to be put in jail under a vague law. There's nothing in Johnson that suggests there was any concern other than clarity, predictability, determinacy. The void for vagueness cases that the author of Johnson chose appear to have been very carefully selected. None of them involve constitutionally protected conduct. None of them involve any other constitutional interest in play. We have Hornbook law that shows, Professor Tribe's treatise, that void for vagueness component of the due process clause, not the substantive due process component. Roberts, what procedures would allow somebody to be convicted under the residual clause? If it's a procedural protection, there must be some procedures that would allow people to be convicted. What are they? Absolutely. What Johnson required was the use of a framework that specified the nature of the inquiry to be conducted and the kinds of factors to be considered. And the fact that Congress can go back and fix the problem with residual clause, as members of this Court have pointed out, and as my friends on the other side concede, only shows that Johnson did not, quote, deprive, that's the language of Montgomery, that's the language of Penry, did not deprive Congress of any substantive power, if you will, to impose 15-year sentences. The problem in Johnson was not that something was wrong with 15-year mandatory minimums per se, but because Congress just hadn't articulated its statutory goal in sufficiently precise terms. Suppose you have a statute which makes it a crime to engage in conduct annoying to others. That was Coates. And the Court says this is void because it is vague. That is procedural? That's the Coates decision, which said, struck down a State law, I think it was, that said that you can't stand on the street and annoy other people and you definitely can't annoy a police officer. The Court said that is void for vagueness because nobody can tell what the particular standard is. But the Court actually went out of its way to say, certainly States can regulate behavior on the street. We're not saying that States lack the power to do this. We're just saying you have to do this in a sufficiently clear way. So Coates fully supports our reading of the void for vagueness doctrine. Roberts So the procedural protection is that Congress can change the law? The procedural protection is the right to fair notice and an avoidance of the risk of arbitrary enforcement. Those are the two prongs of the void for vagueness doctrine. And those have always been understood to come under the procedural due process component. Johnson was based on the Fifth Amendment, so there are essentially only two options here, Mr. Chief Justice. Johnson was either founded on the procedural component of the due process clause or it was founded on the substantive component. And I think that if you read fairly Johnson from beginning to end, you'll not see any substantive concern, a concern that the underlying conduct was somehow constitutionally protected, which after we make. Sotomayor Why don't we make fairly retroactive? Congress could have made mere possession, I think it subsequently did in some form, it could have changed the law and fixed the problem. How is that different than here? It could make certain class of crimes, this defendant's particular crime, if it chose, it could take the elements of this crime and say these are violent crimes. So how are they different? We've made Bailey retroactive. It's different in two ways, Justice Sotomayor. First, Bailey was a statutory construction case. And what Boozley explained is that when this Court construes Federal criminal statutes in such a way as to definitively exclude particular conduct, they are mere possession of a firearm. Sotomayor Excluded particular conduct. We've said the residual clause can't define a violent crime. Well, with all respect, that is not how we read Johnson. Johnson said the statute is indeterminate. We can't say that particular conduct is definitively outside the scope of the statute, which is what the Court did in Begay and Chambers and cases like Bailey.  said was criminal. Sotomayor But you still, whether it's Bailey or here, Congress has to redefine the crime. It has to step in and pass a new statute. So why is it substantive in one respect but not another? Saying two things have to be done. The law has to be changed. Because we have to ask why the law has to be changed. In Bailey, the law had to be changed because this Court said the statute didn't reach particular conduct. And so the defendants would be innocent of anything that Congress ever meant to criminalize. In Johnson, though, the Court didn't say, we know that all defendants sentenced under the residual clause have been sentenced on the basis of a crime that Congress never meant to cover. In fact, the Court said quite the opposite. It said we can't tell. Sotomayor But you just admitted when you started that Congress could change the statute to make nonuse criminal, just possession. Sotomayor Yes. And that shows that Congress can't do that. Sotomayor It's not that you can't change the statute and make this conduct criminal. I don't see the difference. I don't see you still need a congressional act to do that. Right. And the fact that you needed a congressional act both in Bailey and here just shows our ultimate point, which is that Johnson didn't deprive Congress of the power to legislate in this area. It simply said you have to do a better job. The Court didn't strike down the residual clause because Congress had exceeded its powers under Article I or regulated something that didn't affect interstate commerce or regulated something, some conduct, some private primary conduct that is entirely and categorically off limits. The Court just said you need to do a better job. Ginsburg So it's your point? How do you deal with the argument that counsel made in saying it would be passing strange if when a law is narrowed, then it's substantive, but if a law is invalidated entirely and we put it on the procedural side, then at first, at least that seems to be a persuasive argument? Well, I would submit it doesn't ultimately work at the end of the day for two reasons, Justice Ginsburg. First, the case of Boozley is a statutory construction case. There was no new constitutional rule in Boozley. So all the late Chief Justice Rehnquist said there writing for the Court is that when this Court interprets a statute, we are outside the Teague framework entirely. And there, of course, the Court hadn't even reversed itself on the statutory question, so there wasn't even a new statutory issue there. When the Court says what a statute definitively means, it is making a judicial determination that the conduct at issue falls definitively outside the scope of the relevant statute. Here, precisely because Johnson said that the clause was hopelessly indeterminate, we can't know with certainty that everybody's conduct fell outside the clause. At the end of the day, it is a function of this Court's approach to statutory construction decisions on the one hand, which just aren't affected by Teague. After all, the problem that Teague set out to solve was retroactivity in a world of changing constitutional rules, and so statutory rules are to one side. We should be looking here to the test for when a new constitutional rule is substantive. And I think it's quite revealing that my friends on the other side have not even attempted to argue that the rule in Johnson fits within either of the traditional standards for distinguishing substance and procedure in the constitutional context. Breyer, if we go back to Justice Kennedy's question and the Chief Justice's, I may not have the distinction correct, but I thought the distinction, at least as we've interpreted it, in Teague would provide a new, produced a different answer. There is a statute. It says that pestiness is a crime. Sounds like a pretty good statute. But you can't pester people. Okay. Now, the Court says, I'm sorry, desirable, though that may be its unconstitutional. That's the end of it. Okay? There are 32 people in prison for having violated that statute. They were convicted many years ago. Do they under Teague get out? I don't think they do. Breyer, that amazes me, because I thought the point of Teague was that if the statute under which they are convicted doesn't exist anymore because of whatever reason, because, for example, and did not exist at the time because it was an unconstitutional statute, they are serving time under a statute which was then and is now nonexistent, and therefore they get out. But if the change that was made in the law is a change having to do with the accuracy of the procedure that was used to convict them of that statute, that statute still exists. They didn't get the right procedure when they got convicted of it, but we're not going to let everybody out of prison for those kinds of mistakes for a variety of reasons. Maybe there are too many of them or whatever. But then he doesn't get out under Teague. Now, that's what I thought basically we said. Bowsley, I don't know, a bunch of cases here. Now, if I have this fundamentally wrong, if what I've just said is wrong, so you can explain to me what I do. Justice Breyer, what Justice Harlan said and what the Court adopted in Teague is that habeas should issue when private primary conduct has been put, and this Court has reiterated in Montgomery, altogether beyond the power of the pronunciation of a bribe. Breyer, that's what he says there, but later we say substantive rules include decisions of this Court holding that a substantive Federal criminal statute does not reach certain conduct. And that's the statute. See? Now, therefore, there is a statute, perhaps, but this person is in prison, and this person is in prison for doing a thing that there is no statute makes illegal. That's how I read that. That's Bowsley. And that's the statutory construction decision, which is all my friends have to rely on here, when, of course, what we're analyzing is a constitutional rule. And they don't even say that Bowsley, by its terms, applies. They ask you to say, to adopt a radical new test, a comparable effects test. But we don't need to analogize by an analogy to a constitutional rule, which is what Bowsley is about. We should use the standard for judging whether a constitutional rule is substantive or procedural. Kagan Well, why would Justice Harlan have wanted that distinction in the world of constitutional rules? Because it seems to me Justice Harlan, as Justice Breyer suggested, would have looked at this and said, well, yes, but these person, or these 32 people, could not be in jail, it is improper for this person to be sitting in jail under any statute that Congress lawfully passed. I mean, it might be that they could be sitting in jail under a different statute that Congress didn't pass, but Congress didn't pass that statute, and that makes this sentence for this person improper, unlawful, under any measure. So why would Justice Harlan have wanted to exclude those people from the protection that he suggested in Mackey? Sherry What Justice Harlan was concerned about in Mackey was situations where the conduct at issue is immune from punishment. Nobody is immune from punishment under the residual clause in the sense that they were engaging in constitutionally protected conduct, which is plainly what Justice Harlan was talking about. And it's not enough that this Court simply invalidates a statute. We must ask why the statute was invalidated. Was it invalidated for a reason that was based on a substantive version or procedural reason?  I'm struggling to understand the reason behind it, because you said if he weren't immune, if Congress could have passed a different statute, you know, coulda, woulda, shoulda, Congress didn't pass a different statute, and that means he's in jail unlawfully. Sherry Well, one is in jail lawfully if at the time the sentence became final he was there under the law as it stood at the time. We only apply new rules on habeas when they fall within this narrow category of substantive rules. And the notion that when this Court declares a statute unconstitutional for any reason, that makes the underlying judgment or conviction or sentence unlawful, and as if it never were, the void ab initio concept going all the way back to the 19th century has been rejected by this Court in its retroactivity cases. Linkletter explained that even when this Court invalidates a statute, the prior existence of that statute is an operative fact that cannot justly be ignored. So we've moved past, well past, any notion where a law that has been declared subsequently unconstitutional simply disappears and we must all pretend as if it never existed. Breyer Still, you have a point, but it's not quite like the Pest statute. The Pest statute, when we say there is no such statute, it's unlawful, and there they are, 22 people now in jail because they violated a statute and that statute there was no such statute or it isn't in the future, and so we say you get out. On the other hand, if the only reason that they anybody got out is because they were convicted under a procedure, you see it was unconstitutional, they are within the class of a valid statute putting in jail, a valid statute puts them in jail. But we're not certain he's the right one because the procedure was unfair. Is he really that kind of person? And that's the procedural thing. It doesn't go backwards. Now, if those are the two categories, this has some of both, you're quite correct, he was convicted for having violated a legitimate law, but he's not quite like our Pest. On the other hand, after time has passed, a large number of these people are sitting there in prison and there is no statute of the Federal Government that says a person like you have been told you are, deserves, or can be put in jail. And so in that respect, it's like the Pest. And so is it like, which is it like, that seems to be the problem in this case. I don't know if you want to address that or not, it's up to you. I would love to. Johnson has to be substantive if it's going to apply on collateral review. So if you're not quite sure whether it's procedural or substantive, then the default has to go to non-retroactivity. Because whether we want to call substantive due process rule an exception to Teague, or whether we simply want to say they're not subject to Teague at all, the point is there's a particular type of rule that qualifies as substantive, and if it doesn't squarely qualify as substantive. And I think the fact that my friends have had to resort to an effects-based test that draws from a statutory construction case that analogizes to the actual first Teague exception, shows that Johnson doesn't squarely fall into the bucket of a substantive rule, and my second response, Justice Breyer, would be the Teague assumes. It's inherent in Teague that there will be constitutional violations that go unremitied. Otherwise, all new constitutional rules, as announced by this Court, would apply retroactively. And that is certainly not what Justice Harlan ever intended. Roberts. Roberts. Roberts. My understanding is that it's properly categorized as procedural if there are some people who could be convicted under it legitimately. In other words, Miranda, you didn't get Miranda warnings, but, you know, you were a criminal law professor, you knew what your rights were. But who is it who could be convicted legitimately under the residual clause? We're sure, yes, okay, it's vague, whatever, but you are definitely covered. So you shouldn't get the protection of what you would regard as a procedural flaw. We certainly agree that Johnson invalidated the residual clause, and therefore, to answer your question, Mr. Chief Justice, nobody can be sentenced under the residual clause going forward, and the residual --" But the question that Teague asks is whether that remedy should be available on collateral review, and the answer to that depends upon, and this was reaffirmed just two months ago in Montgomery, the existence of a substantive procedural guarantee. Once we cut the analysis loose, substance procedure, under Teague's first exception, cut it loose from the underlying constitutional basis for the rule, we're going to be entirely at sea. Roberts But my understanding is that the characterization of that as procedural, it turns on whether or not there is a significant group of people who could be convicted under that provision where vagueness would be off the table. However it may appear to other people engaging in this type of conduct, maybe it's vague for them. But for this group of people, that's not vague. So we're not worried about not applying it retroactively. But we can't know that about everybody that was sentenced under residual clause, and yet holding Johnson retroactive would give relief to everybody categorically that was sentenced under residual clause. If any problem was found. Roberts Including some people you think it shouldn't be applied to. Absolutely. Roberts So who shouldn't the residual clause apply to? Well, for instance, let's take the Petitioner in this case, Mr. Welch. His sentence was correct under the residual clause at the time it became final, which is what Justice Harlan said we should be looking at. But even today, Mr. Chief Justice, his sentence is plainly correct under the elements clause. Florida law has made clear since 1922. Roberts But I'm talking about the residual clause. Yes. Roberts I guess what I'm trying to ask you is who are the people who you can say without a doubt their conduct otherwise involves conduct that presents a serious potential risk of physical injury? The people who committed the crimes that were at issue in this Court's decisions in James and Sykes, the people who had engaged in vehicular flight and the second crime is now escapable. Roberts Well, the problem in Johnson, I think we took a look back and said, well, you know, we did say that, but I have to think Johnson suggests that those decisions were not clear. Florida law has made clear. Certainly, Johnson overruled those decisions with respect to the vagueness holding, but this Court itself said that people who engaged in those two particular crimes were entirely correctly sentenced under the residual clause. The Court actually didn't say that that itself was wrong. And what's interesting about void for vagueness doctrine and Johnson in particular, of course, is that it took 30 years for the vagueness of the residual clause, the hopeless indeterminacy of it, to materialize. That's all the more reason not to pretend as if the residual clause never existed at all, as my friends would have us do under the 19th century Blackstonian. Roberts So you would go back and say that we think that vehicular homicide is conduct that today, with the benefit of the analysis in Johnson, I mean, assuming we were wrong in those cases, which I think Johnson suggests or said, that nonetheless it's clear that those people, the vehicular homicide people, we shouldn't be concerned about applying this, not applying this retroactively, because they, another category, clearly are covered by it. In other words, put aside our cases where I think, I understand your argument, well, we decided that, but I think Johnson suggests we decided it wrongly. Yeah. O'Connell There's other kinds of crimes. I'm sorry, Mr. Chief Justice. Roberts Well, what's another example? O'Connell Other kinds of crimes that have been found by the lower courts to count are attempted rape, child molestation, assault with intent to kill. I think all of those crimes would fall within the heartland of the residual clause without a whole lot of debate. But the point, again, is that we need to go back to the existence of a substantive constitutional guarantee. The reason why we're here in a sentencing case is because Penry extended Teague into the sentencing context by reasoning that Justice Harlan had spoken of, quote, substantive categorical guarantees accorded by the Constitution. Nobody in this case has even attempted to fit Johnson within that core of Justice Harlan's theory. The cases that Justice Harlan cited in footnote 7 of Mackey, that famous opinion, those cases, those conduct immunizing decisions of this Court, like Griswold, Stanley, Street, and Loving, the other side does not even mention those cases in their briefs. I think that shows just how far Johnson retroactivity would be from anything that Justice Harlan ever intended. If the Court has no further questions. Roberts Thank you, counsel. O'Connell Thank you. Roberts Mr. Ali, you have six minutes remaining. Ali. Ali Thank you, Mr. Chief Justice. I just have a couple quick points to make. The first one question by you, Mr. Chief Justice, the Court's amicus suggested that the clear examples under Johnson would be James and Sykes, and I'd just like to point out how this Court described James and Sykes in Johnson. This Court said that James, the case of James illustrates how speculative the enterprise under the residual clause is. Roberts Yeah. Well, she also went on to suggest some holdings in the lower courts that seemed a little more on point than James and Sykes. What about those? Ali Well, Your Honor, what this Court said was that it was skeptical that those clear examples cited by the government in Johnson and cited by the dissent in Johnson were so easy once you looked at those more closely. And so the Court gave the example, for instance, of rioting in a prison and said that when you actually break that down, it's not so simple. And the Court seemed skeptical that there would be very many offenses. Now, it did suggest, it did accept that there would be some that fall under that. Roberts Well, it's like, you know, rioting in prison may be right, but the example of rape, doesn't that clearly fall under that language? Ali Well, the Court accepted that there may be some clear cases. It didn't define what those universal cases it had in mind. But more importantly, what the Court did was say the residual clause is so standardless that despite that fact, we are going to invalidate it altogether because it is not capable of being applied. And that's what's relevant for the purposes of retroactivity. Sotomayor What would be your rule on this issue? I posited to Mr. Judge, to the Assistant Solicitor General, what would be your take on its effect on the guidelines? Ali Your Honor, with respect to the advisory guidelines, we've I know that's not the issue we've posed, but I just want to have a general idea. We think that the guidelines are different in that, again, they don't change the statutory range. Now, that would be one basis this Court could distinguish, but we do think it's a complicated question. So, for instance, in Peugh, this Court talked about the anchoring effect of the guidelines, and this Court's pending decision in Molina-Martinez may also comment on the anchoring effect of the guidelines. And so there is an argument to be made there, but I do agree with the government that it can be distinguished on the basis that when somebody brings a challenge based on the residual clause of the guidelines, what they're saying is, my sentence might have been different. When they bring a challenge to it. Breyer That's not it, the residual clause. The risk here is the, which I'd like to know your response to, is what we're saying is a person who's sentenced, that's not conviction of the crime. He's been convicted. But a person whose sentence is higher than it otherwise would have been due to an unconstitutional provision of law must get the lower sentence, even if he was sentenced 50 years ago. That's what we would be saying. Now, there are many, many reasons why certain guidelines or perhaps statutory portions of the Sentencing Act might be held unconstitutional. I think I agree with you. The reason isn't the point in T. The fact is that it's whether the thing is struck out, because if it's struck out, there's no basis for holding the person in the prison. You see, and that's what you're arguing. And what I can't foresee in this, and maybe you have, is what effect it would have on sentencing across the board. The government's reassuring because they say, well, we've thought about it. It doesn't seem to have that much of an effect. It's important. But if you could be reassuring on that, if you've thought about it. Your Honor, I will be reassuring on that. I'm sure you would. What we're saying is this Court, to be clear, has not distinguished in the context of retroactivity or habeas between conviction or sentence, and that distinction wouldn't make sense because we're talking about whether someone's confinement is unlawful. Now, what we're saying and what the — I think the government, the reason it wouldn't have such a great effect is that what we're saying is when it is just one of those substantive criterion in a particular provision which is setting forth the sentence which is struck down, it's not simply a procedure or some sort of rule governing how you reach that sentence. It's that rare circumstance in which an actual substantive criterion which qualifies someone or makes someone eligible for the punishment authorized, which leads to the point that Your Honor described, which is that this person, Petitioner, is now spending time in prison that was not authorized by any valid act of Congress. And that's what makes this case much more clear than the Guidelines, because someone in the Guidelines circumstance cannot assert that aspect of it, that my sentence was not authorized by any valid act of Congress. Now, again, there may be arguments that could be made to suggest that that valid — that it's relevantly similar, but it's certainly not something that's necessarily entailed. I'd just like to comment briefly on the idea that substantive rules should be limited to those which — in which Congress is completely deprived of its authority. We think that Chief Justice Rehnquist answered that question in Bowsley. He didn't talk about Congress's intent. In fact, what he said was that when the statute's scope is narrowed, like rules which place conduct beyond the power of Congress, the law doesn't punish those persons. You create a set of persons who the law doesn't punish. And for that reason, in this circumstance, we believe it's controlling as well. Johnson invalidated the residual clause. There was no law authorizing the punishment of 15 years that Petitioner received at trial. And we believe that Chief Justice Rehnquist's decision in Bowsley controls here, and it follows that the court of appeals decision should be reversed. Thank you. Roberts. Thank you, counsel. Ms. Walker, this Court appointed you to brief and argue this case, an amicus curiae, in support of the judgment below. You have ably discharged that responsibility, for which we are grateful. The case is submitted.